UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT CARDEW, et al.,

Plaintiffs,

DECISION AND ORDER

-vs-

21-cv-6557-MAV-MJP

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, et al.,

Defendants.

## INTRODUCTION

Plaintiffs Robert Cardew, Harrell Bonner, Philip Nelson, Melvin Johnson, and Khalik Jones commenced this putative class action against Defendants New York State Department of Corrections and Community Supervision ("DOCCS"); Anthony J. Annucci, in his official capacity as Acting Commissioner of DOCCS; and Amy Lamanna, in her official capacity as Superintendent of Five Points Correctional Facility ("Five Points").[1] Plaintiffs have disabilities that require use of wheelchairs and/or canes.

Plaintiffs allege that Defendants employ policies and practices at Five Points that deprive them and a similarly situated class of individuals with mobility disabilities with access to the facility's programs, services, and activities in violation

[1] Following commencement of this action, the Court granted motions to substitute Daniel F. Martuscello, III and Reginald Bishop as Defendants in their official capacities in place of Anthony J. Annucci and Amy Lamanna, respectively, pursuant to Federal Rule of Civil Procedure 25(d). *See* ECF Nos. 112, 145.

of Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

Plaintiffs seek to enjoin Defendants' allegedly discriminatory policies and practices and require them to provide adequate accommodations to ensure that people with mobility disabilities have the same access to Five Points' programs and activities as non-disabled people. The named Plaintiffs also seek compensatory damages for themselves.

Pending before the Court is Plaintiffs' motion for class certification of the following class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2):

> All people with mobility disabilities who are currently incarcerated or will be incarcerated at Five Points Correctional Facility. 'Mobility disabilities' is defined to include any physical impairment that substantially limits the major life activities of walking or standing, consistent with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Plaintiffs' motion is fully briefed. ECF Nos. 89 (Defendants' Opposition), 156 (Plaintiffs' Reply). For the reasons discussed below, Plaintiffs' motion is GRANTED.

**BACKGROUND**[2]

DOCCS incarcerates more than 31,000 people across dozens of facilities at any given time, including approximately 1,000 individuals at Five Points, a maximum security prison. ECF Nos. 1 ¶ 37; 53-7. The Five Points population includes over 40

[2] The following facts are taken from the complaint and the documents attached to the parties' submissions in support and opposition to class certification. *See C.H. by J.G. v. Hochul*, No. 16-CV-735-LJV, 2024 WL 4833815, at *1 n.5 (W.D.N.Y. Nov. 20, 2024) ("On a motion for class certification, the plaintiff's pleadings are assumed to be true. [T]he court must nevertheless conduct a rigorous analysis to determine whether a class action is appropriate, considering materials outside [ ] the pleadings and weighing conflicting evidence as necessary.").

people at any given time who require wheelchairs or other mobility aids. ECF Nos. 53-8–53-10. Five Points has five housing units or "blocks." ECF No. 1 ¶ 38. Meals are provided in a communal eating space known as the "mess hall" or "chow." *Id.* The facility also provides educational, religious, and vocational programs, a gym, a weight room, and a law library, among other programs and services. *Id.* ¶¶ 38, 39.

**A. Five Points' Policies and Procedures**

In order to facilitate access to Five Points' programs and services by individuals with mobility disabilities, Defendants employ various policies and programs at Five Points such as storing wheelchairs in a "shared" bank and offering "pushers" to assist individuals who cannot push their wheelchairs themselves. Plaintiffs allege that such institutional-wide policies and programs, among others, are unlawful in that they deprive themselves and a class of similarly situated individuals with access to Five Points' programs and services.

**i. Identification and Accommodation Process**

DOCCS does not maintain a centralized process to track the disability-related needs of its incarcerated population, including at Five Points.[3] Plaintiffs allege that when people are transferred into Five Points, their mobility aids are confiscated even if they were approved at a different DOCCS facility and they cannot request their

[3] In Defendants' Supplemental Response to Document Demands, Defendants state that "they do not keep documentation of inmates who had accommodations at other facilities but not at Five Points. Each correctional facility's medical team determines what accommodations to provide each inmate at that facility, so all accommodations are taken from inmates upon entry into Five Points and then the Five Points medical facility determines whether to issue a permit for an accommodation at Five Points. ECF No. 53-6 at 6 (Response No. 8). The Court "precluded [Defendants] from relying on the existence of an accommodations tracking system across DOCCS facilities or documents indicating a practice of tracking accommodations across facilities in support of their defenses." ECF No. 38 at 3.

return until they meet with a primary care provider, which can take weeks or months, according to Plaintiffs, thereby delaying the provision of necessary mobility accommodations. ECF Nos. 1 ¶ 41–45; 53-6 at 6 (Response No. 8). Without their mobility aids, Plaintiffs allege that people with mobility disabilities at Five Points are unable to utilize the facility's programs and service in the same manner as non-disabled people. ECF No. 1 ¶ 47.

**ii. Communal Wheelchairs in Shared "Bank"**

When DOCCS does approve a mobility aid such as a wheelchair for use at Five Points, Plaintiffs allege that approval is typically limited to access from a shared bank located at a distance from the person's cell and only for use for long distances. *Id.* ¶ 58. To obtain a wheelchair from the shared bank, individuals must "navigate their cells and cellblocks without the use of wheelchairs, imperiling their safety . . . ." *Id.* ¶ 59. In "many cases," Plaintiffs allege that "there are not enough shared wheelchairs for all those who require mobility assistance," citing, as an example "Nine Block," which has seven men who need wheelchairs but only a single chair that must be shared. *Id.* ¶ 61. The wheelchairs in the shared bank are not tailored to the person's disability-related needs and are allegedly "poorly maintained and frequently in acute disrepair." *Id.* ¶ 63. Because of these issues, Plaintiffs allege that people with disabilities are excluded from Five Points' programs and services, such as meals, recreation, jobs, and the law library. *Id.* ¶ 65.

**iii. Inmate Mobility Assistant ("IMA") program**

DOCCS manages and operates an Inmate Mobility Assistant ("IMA") program

at Five Points, which is also known as the "pusher" program, whereby certain incarcerated people act as wheelchair "pushers" for a work assignment. *Id.* ¶ 71. To work as a "pusher," Plaintiffs allege that a person is required, by policy, to pass a medical evaluation and be trained to assist people with disabilities in transferring to and from the chair. *Id.* ¶ 82. According to Plaintiffs, however, Five Points "rarely, if ever, enforces these requirements . . . ." *Id.* ¶ 83.

To qualify for the INA program, a person with a disability requires a permit from Five Points' medical unit granting the accommodation. *Id.* ¶ 72. A "pusher" is not assigned to assist a specific individual; rather, "pushers" are assigned "on an ad hoc basis" each time an individual with a disability requests mobility assistance. *Id.* ¶ 73. To request a "pusher," a person with the disability "must walk unaided or push themselves from their cell to the correction officer's desk and request a pusher." *Id.* ¶ 74. The person must then wait for as long as 20 to 45 minutes before a "pusher" arrives. *Id.* ¶ 75. Plaintiffs assert there are instances where no "pushers" are available and Defendants conscript a person not trained or compensated through the INA program to act as a "pusher." *Id.* ¶ 76. As a result of these deficiencies, Plaintiffs allege that their safety is jeopardized and they miss meals and recreation, among other facility services and programs.

**iv. Cell Assistants**

Cell assistants are incarcerated individuals who have been assigned to assist people with mobility disabilities in activities of daily living. *Id.* ¶ 66. Cell assistants perform duties such as assisting a person with a disability in cleaning their cell,

getting into and out of bed, transferring into and out of a wheelchair, making their bed, getting dressed, putting on socks and shoes, or alerting correction officers if there is a medical emergency. *Id.* ¶ 67. Plaintiffs allege that requests by people with disabilities for cell assistants frequently go unfulfilled for months or even years, and when assigned, they are not properly administered, supervised, or trained. *Id.* ¶¶ 68–70.

**B. Named Plaintiffs**

Robert Cardew was incarcerated at Five Points from September 2018 through November 2021.[4] ECF No. 53-12 (Cardew Decl.) ¶ 3. Cardew has various medical conditions including cardiomyopathy which causes chest pain and dizziness when standing, walking, or performing physical activity. *Id.* ¶¶ 5–6. He "cannot safely stand for more than a moment or walk." *Id.* ¶ 6. He has used a wheelchair since September 2018. *Id.* ¶ 8. Cardew is 6'5" and the wheelchair he was assigned in early 2020 "was for a smaller person" and had cracked and worn padding as well as a loose break. *Id.* ¶ 11. He was denied permission to keep his wheelchair in his cell and was required to keep it in the shared wheelchair bank where it sustained damage or was missing when he needed it. *Id.* ¶¶ 14–15.

Cardew relied on the IMA program to access Five Points' programs and services. *Id.* ¶ 20. He did not have an assigned pusher and there were no pushers available when he needed to go somewhere "[o]n the majority of occasions." *Id.* ¶ 22. Correction officers "frequently" conscripted non-IMA pushers to push him and on one

[4] Cardew currently resides at Wyoming Correctional Facility. ECF No. 53-12 ¶ 2.

occasion, allegedly enlisted co-Plaintiff Philip Nelson to push him. *Id.* ¶¶ 23, 25. Because of the lack of pushers, as an example, Cardew missed a meal or was delayed in traveling to the mess hall six times in one week in January 2021. *Id.* ¶ 26.

Harrell Bonner has been incarcerated at Five Points since early 2010. ECF No. 53-13 (Bonner Decl.) ¶¶ 2–3. Bonner has various medical conditions and cannot use his left arm. *Id.* ¶¶ 5–7. Bonner needs a wheelchair to move around the facility but cannot push himself without significant chest pain and difficulty breathing. *Id.* ¶ 9. Prior to arriving at Five Points, Bonner had a DOCCS-issued wheelchair that he received from a different facility. *Id.* ¶ 10. That wheelchair was fitted to his body, had functional arm and leg rests, and was in good working condition. *Id.* Upon his arrival at Five Points, that wheelchair was "immediately confiscated" and replaced with a wheelchair that was not sized to his body and was in poor condition, including having non-functional leg rests. *Id.* ¶¶ 10–11. From October 17, 2019 through June 2020, Bonner was given a wheelchair to use from the shared wheelchair bank that was too small for his body and was "falling apart." *Id.* ¶ 18. He received a new wheelchair in June 2020 but it had many of the same issues. *Id.* ¶ 19. Bonner depends on the IMA program. *Id.* ¶ 30. He does not have an assigned "pusher" and has been stranded places because a "pusher" could not be found. *Id.* ¶¶ 31–32. Corrections officers have assigned a person who was not a paid IMA pusher to assist him and during those instances, Bonner was banged into walls, among other issues. *Id.* ¶ 41.

Philip Nelson has resided at Five Points since October 2014. ECF No. 53-14 (Nelson Decl.) ¶ 3. Nelson has various medical conditions that limit his mobility. *Id.*

¶¶ 5–6. He uses both a cane and wheelchair to navigate throughout Five Points and cannot push his own wheelchair without significant pain, lightheadedness, and trouble breathing. *Id.* ¶ 8. Upon arrival at Five Points in 2014, prison staff confiscated his wheelchair, which he was issued in 2010 while at Wende Correctional Facility. *Id.* ¶¶ 9–10. Nelson did not see a medical provider at Five Points until a month had passed *Id.* ¶ 12. Prior to that appointment, he was not given access to a mobility aid at all even though he had consistently used a wheelchair since 2010. *Id.* ¶ 11. The medical provider at Five Points granted Nelson a permit to occasionally use a shared wheelchair to travel "long distances." *Id.* ¶ 12. The wheelchairs in the shared bank are often not available and when they are, they are not suited to Nelson's body and are in poor condition. *Id.* ¶¶ 20–22. Nelson depends on the IMA program to get from place to place. *Id.* ¶ 30. Nelson does not have a personal "pusher" and "[o]n the vast majority of occasions, no pushers are available . . . ." *Id.* ¶¶ 31–32. He also must "wait a long time" to receive a "pusher" when requested. *Id.* ¶ 34. As a result, Nelson has missed meals, recreation, medical appointments, and visits to the law library, among other services at Five Points. *Id.* ¶¶ 35, 37. Despite having a wheelchair access permit, he was assigned the job of IMA "pusher" and received no training or medical evaluation for the position. *Id.* ¶¶ 38–39

Melvin Johnson resided at Five Points from approximately May 2019 until September 29, 2022. ECF No 53-15 (Johnson Decl.) ¶ 2. Johnson has paraplegia of his lower legs, among other medical conditions, and cannot use his legs to walk. *Id.* ¶¶ 4–9. Johnson used a wheelchair to move around Five Points but could not push

himself. *Id.* ¶ 11. Prior to arriving at Five Points, Johnson was approved and measured at a different DOCCS facility for an individualized wheelchair designed for his paraplegia. *Id.* ¶ 12. Johnson never received a proper wheelchair while at Five Points despite raising the issue. *Id.* ¶ 13. Johnson depended on the IMA program. *Id.* ¶ 38. Johnson did not have a personal "pusher" and "[o]n the majority of occasions, no pushers were available . . . ." *Id.* ¶ 40. Johnson was "rarely provided a pusher" when he needed one. *Id.* ¶ 41. Correction officers "frequently" conscripted non-IMA "pushers" to push him, resulting in injury after being pushed into doors or walls. *Id.* ¶¶ 41–42, 51–52. He requested "pushers" for his daily trips to the medical unit but would have to request another "pusher" for his return trip. *Id.* ¶¶ 43–44. Johnson would have to wait long periods before another pusher would return to assist. *Id.*

Khalik Jones resided at Five Points from approximately December 2018 until the end of August 2021. ECF No. 53-16 (Jones Decl.) ¶ 2. While at Five Points, Jones had trouble standing, walking, and carrying objects due to various medical conditions. *Id.* ¶ 5. He required a cane to safely move around his cell and to get from one place to another. *Id.* Prior to his arrival at Five Points, Jones used a jail-issued cane and wrist brace that supported his hand and allowed him to do tasks with less pain, like gripping a cane. *Id.* ¶¶ 7–8. While he was initially allowed to keep using his cane and wrist brace upon arriving at Five Points, they were eventually confiscated in July 2019. *Id.* ¶ 9. Despite multiple requests to return his cane, Five Points refused for the remainder of his stay at the facility. *Id.* ¶ 12. Without his cane, he walked very slowly, was in pain, and fell on numerous occasions. *Id.* ¶¶ 13, 17–19.

To minimize the pain and risk of falling, Jones "generally tried to keep to [his] cell," causing him to miss meals and other programs. *Id.* ¶¶ 20, 24–26.

### C. Procedural History

Plaintiffs commenced this lawsuit on August 30, 2021, challenging Defendants' alleged systemic failures at Five Points to provide people with mobility disabilities the reasonable accommodations needed to access the facility's programs and services. ECF No. 1. They moved for class certification on February 15, 2023. ECF No. 53. Defendants did not initially oppose the motion but eventually filed an untimely opposition on July 5, 2024, ECF No. 89, which the Court accepted, ECF No. 146. The Court allowed Plaintiffs to file a reply, which was received by the Court on July 16, 2025. ECF No. 156-57.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23, a party seeking to certify a class must satisfy all four elements of Rule 23(a), and at least one of the three categories described in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), the party seeking certification must demonstrate: (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy"). The Second Circuit also recognizes an "implied requirement of ascertainability" for class action certification to ensure that

the proposed class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member," *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citation omitted).

Where the requirements of Rule 23(a) are satisfied, "[a] class action may be maintained" if one of the three subdivisions specified in Rule 23(b) applies. As relevant here, Plaintiffs seek certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The party seeking class certification bears the burden of establishing the requirements of Rule 23 by a preponderance of the evidence. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). The moving party must affirmatively demonstrate compliance with the Rule—that is, they must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis in original) ("Rule 23 does not set forth a mere pleading standard."); *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable"). Certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]" *Wal-Mart*, 584 U.S. at 350–51; *see Ciaramella v. Zucker*, No. 18-CV-6945 (JPO), 2019 WL 4805553, at *12 (S.D.N.Y. Sept. 30, 2019) (explaining that the "rigorous analysis" involves considering

materials outside of the pleadings and weighing conflicting evidence as necessary) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiffs contend that they have met the requirements of Rule 23(a) and Rule 23(b)(2) and ask the Court to certify a class consisting of all people with "mobility disabilities" who are currently incarcerated or will be incarcerated at Five Points with "mobility disabilities" defined to include any physical impairment that substantially limits the major life activities of walking or standing, consistent with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. The Court agrees with Plaintiffs and certifies the class as proposed.

### I. Rule 23(a) Requirements

#### A. Numerosity

Rule 23(a)(1) requires classes to be "so numerous that joinder of all members is impracticable." Because the ultimate touchstone of the analysis is practicability of joinder, courts must consider all of the relevant circumstances surrounding the case, such as: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Numerosity is "presumed" when a putative class contains at least 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the proposed class satisfies the numerosity requirement. Plaintiffs presented documentary evidence demonstrating that the potential class size is in excess of 40 members. As Plaintiffs note, Defendants' own tracking systems reflect that the number of potential class members using either a wheelchair or other mobility aid, or unable to traverse a single flight of stairs, is in excess of 40 members. *See* ECF Nos. 53-8 (identifying 48 inmates at Five Points who require a wheelchair); 53-9 (identifying 40 inmates at Five Points who require an ambulatory aid); 53-10 at 4 (identifying 43 inmates at Five Points who have a physical impairment preventing them from traversing more than a single flight of stairs).

Additionally, several contextual factors militate in favor of finding that the putative class is so numerous that joinder of all members is impracticable: (i) the putative class consists entirely of current and future incarcerated individuals, making joinder difficult; (ii) even though the class members will share the same geographic area, the ability of any individual member to maintain their own lawsuit will be limited because they are in the criminal justice process; and (iii) litigating this case as a class action promotes judicial economy. *See M.C. v. Jefferson Cnty., New York*, No. 6:22-CV-190, 2022 WL 1541462, at *2 (N.D.N.Y. May 16, 2022). Indeed, class action lawsuits are "particularly well-suited in actions brought by prisoners due to the fluid composition of the prison population . . . [and] generally tend to be the norm in actions such as this." *Clarkson v. Coughlin*, 783 F. Supp. 789, 797 (S.D.N.Y. 1992) (internal quotation marks and citations omitted).

Defendants contend that Plaintiffs have failed to satisfy the numerosity

requirement because they have inflated the size of the proposed class by including individuals who have not "actually suffered injury" or have not been "subject to discrimination based on mobility disabilities." The Court rejects this argument, as it would "impermissibly require the court to adjudicate the merits of the claims of each individual prospective class member prior to class certification." *Johnson v. New York State Dep't of Corr. & Cmty. Supervision*, No. 18-CV-6568-CCR, 2020 WL 2558160, at *4 (W.D.N.Y. May 19, 2020); *Guadagna v. Zucker*, 332 F.R.D. 86, 93 (E.D.N.Y. 2019) (collecting cases where courts have rejected requests to decide of the merits of each putative class member's claim and then determine whether the class is sufficiently numerous based on the number of surviving claims). [5]

At this stage, Plaintiffs are required to demonstrate by a preponderance of the evidence that the number of potential plaintiffs is sufficiently numerous such that joinder of all members is impracticable. Plaintiffs have satisfied that burden. *See Johnson*, 2020 WL 2558160, at *5 ("[T]he prospective class members' incarcerated status weighs in favor of finding numerosity as class certification will enable them to pursue individual and class relief that might otherwise be unavailable in its absence."); *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 574 (N.D.N.Y. 2017) ("[P]laintiffs' class . . . include[s] all future juvenile pre-trial

---

[5] To the extent Defendants contend that each member of the class must submit evidence of standing, the Court disagrees. The Second Circuit "do[es] not require that each member of a class submit evidence of personal standing." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) ("[O]nly one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class."). Defendants have not argued that none of the named Plaintiffs have standing to pursue relief for the class. Additionally, all class members have suffered an injury insofar as they are subject to the same allegedly discriminatory policies and practices at Five Points.

detainees at the Justice Center, the sort of revolving population that makes joinder of individual members a difficult proposition.").

**B. Commonality**

The "commonality" requirement is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The claims for relief need not be identical for them to be common," instead, "Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members. Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (citations and quotation marks omitted); *accord Elisa W. v. City of New York*, 82 F.4th 115, 123 (2d Cir. 2023). "[E]ven a single [common] question" will suffice to establish commonality. *Wal-Mart Stores, Inc.*, 564 U.S. at 359; *Guadagna*, 332 F.R.D. at 93.

Plaintiffs have satisfied this requirement. Plaintiffs allege a common question of law, that is whether Defendants' facility-wide policies and practices at Five Points discriminate against people with mobility disabilities by denying them accommodations needed to access the facility's programs and services. Plaintiffs identify specific programs and practices employed by Defendants that allegedly deprive such persons of equal access to the facility's programs and services, including failing to ensure continuity of accommodations upon arrival at Five Points, limiting wheelchair access to a shared bank, and utilizing a deficient IMA program. Resolution of whether these policies and programs violate the ADA or Section 504

will affect a significant number of the putative class members.

Defendants contend that Plaintiffs cannot establish "commonality" due to the differing types of disabilities and unique factors at play in each reasonable accommodation decision. ECF No. 89-2 at 2, 9–10 (arguing that the Court will be required to assess individualized, medically intensive proof to determine whether Defendants failed to provide reasonable accommodations). While the class members may have distinct disabilities and may not be affected by the alleged failures at Five Point in the same way, "commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012) (internal quotation marks and brackets omitted). Defendants misunderstand the systemic nature of Plaintiffs' claims. Plaintiffs are not seeking to litigate the denial of individual accommodation requests; instead, they are contesting whether certain facility-wide policies and practices at Five Points deprive individuals with mobility disabilities equal access to services and programs. *See Johnson*, 2020 WL 2558160, at *1-2 (finding that the defendants had "misconstrue[d]" the plaintiffs' claims in that plaintiffs were not seeking to "appeal the denial of the individual requests to access services" but were seeking to "challenge the legality of DOCCS's systemic policy of denying access" to programs and activities).

Defendants further claim that class certification is "disfavored" in litigation under the ADA and Rehabilitation Act because such claims require an assessment of reasonable accommodations that are fact specific. ECF No. 89-2 at 9 (citing *Chandler*

*v. City of Dallas*, 2 F.3d 1385, 1396 (5th Cir. 1993)). Notably, Defendants offer no in-Circuit precedent for their generalization, and the Court finds no validity to it, as courts in this Circuit have certified classes in litigation under ADA and Section 504 of the Rehabilitation Act. *See Johnson*, 2020 WL 2558160, at *7 (certifying class of "[a]ll incarcerated individuals with disabilities . . ."); *Williams v. Conway*, 312 F.R.D. 248, 254 (N.D.N.Y. 2016) (certifying class of "all present and future deaf and hearing-impaired prisoners of the Onondaga County Justice Center who have been, are, or will be discriminated against, solely on the basis of their disability . . ."); *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 420–21 (certifying class of "[a]ll people with disabilities, as defined by the Americans with Disabilities Act, who are within the City of New York and the jurisdiction served by the City of New York's emergency preparedness programs and services."). In fact, "courts commonly certify classes in cases involving challenges to governmental policies and practices under the ADA and Section 504 [of the Rehabilitation Act]." *C.H. by J.G. v. Hochul*, No. 16-CV-735-LJV, 2024 WL 4833815, at *4 (W.D.N.Y. Nov. 20, 2024) (collecting cases).

In short, Plaintiffs are challenging the alleged systemic failures of Defendants at Five Points, which can be proven through generalized class-wide evidence. Because Plaintiffs raise at least one common question of law that can be resolved through a common remedy benefiting all or a significant number of the putative class members, Plaintiffs have satisfied the commonality requirement by a preponderance of the evidence.

**C. Typicality**

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The "typicality" requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (internal quotation marks and citation omitted). "Generally speaking, minor variations in the fact patterns underlying the individual claims will not preclude a finding of typicality unless there are 'unique defenses' that threaten to become the focus of the litigation." *A.T. by & through Tillman v. Harder*, 298 F. Supp. 3d 391, 409 (N.D.N.Y. 2018).

Here, for similar reasons as discussed above, the Court finds that the proposed class representatives' claims are typical of the claims of the putative class. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).").The proposed class representatives and members are current and future inmates at Five Points with mobility-related disabilities that substantially affect their ability to walk or stand. This population is subject to the allegedly deficient facility-wide policies and programs discussed above. Because it is alleged that the same unlawful conduct was directed at or affected both the named Plaintiffs and the class sought to be represented, the typicality requirement is met irrespective of any minor variations in the underlying individual

claims.

Defendants contend that "typicality" is lacking because some of the proposed class members have not administratively exhausted their claims under the Prison Litigation Reform Act ("PLRA"). ECF No. 89-2 at 13–14. Because of their failures to exhaust, Defendants argue that the exhaustion defense would threaten to become the focus of the litigation. The Court observes that administrative exhaustion is an affirmative defense, *see A.T. by & through Tillman*, 298 F. Supp. 3d at 409 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)), and, at this stage of the proceedings, the Court finds that Defendants have failed to demonstrate that their exhaustion defense would threaten to become the focus of the litigation.

Specifically, Defendants contend "[u]pon information and belief" that "some of" the Plaintiffs have not filed grievances related to their claims, highlighting three examples: (1) Plaintiff Bonner did not appeal his alleged "pusher" requests, (2) Plaintiff Johnson testified that he did not grieve his request for a cell assistant, and (3) none of the Plaintiffs filed a grievance relating to their motorized wheelchair requests. As to Plaintiffs Bonner and Johnson, Plaintiffs submitted evidence showing that Bonner did appeal grievances relating to the "pusher" program, *see* ECF No. 157-20, and Johnson testified that "[he] can't remember if [he] grieved [the cell assistant issue] or not[,]" ECF No. 89 at 532, Johnson Dep., 32:13-17. As to Defendants' assertion concerning the motorized wheelchair, assuming the veracity of the claim, the exhaustion defense would not be unique to any of the Plaintiffs because Defendants contend that *none* of the Plaintiffs exhausted their administrative

remedies. *See Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 99 (E.D.N.Y. 2013). Thus, at this juncture, the Court finds that neither the exhaustion defense nor any other defense would threaten to become the focus of the litigation. *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 292 (S.D.N.Y. 2012) (explaining that "the Court can address [unique defense] issues at later stages of the litigation if necessary."), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015)

**D. Adequacy**

Under Federal Rule of Civil Procedure 23(a)(4), the Court assesses whether "the representative parties will fairly and adequately protect the interests of the class." A class representative can adequately represent the proposed class if he or she has "an interest in vigorously pursuing the claims of the class" and has "no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

Here, the class representatives assert that they will vigorously pursue the claims of the class and that they have no interests antagonistic to the putative class, with whom they seek systemic reforms for individuals with mobility disabilities at Five Points. Defendants claim that the class representatives are inadequate because Plaintiffs Cardew, Jones, and Johnson have either been released or transferred to different facilities and Plaintiff Bonner received a wheelchair. ECF No. 89-2 at 18. Defendants also contend that the interests of the representative parties and class "greatly differ" because the former seek compensatory damages for themselves but not the class.

As an initial matter, "'[c]ourts that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *Butler*, 289 F.R.D. at 100 (quoting *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997). That is not the case here. The class representatives understand their duty to represent the class and have participated in the litigation, including sitting for depositions. They do not have interests antagonistic to the class, in that they have been subject to the same allegedly unlawful conditions and seek enforcement of federal law in a manner that would benefit a significant number of putative class members.

Defendants rely on mere speculation in contending that the representative parties will not vigorously represent the claims of the class because they are no longer incarcerated at Five Points or seek compensatory damages for themselves only. *See A.T. by and through Tillman*, 298 F. Supp. 3d at 410 ("[S]peculative conflict[s] should be disregarded at the class certification stage.") (internal quotation marks and citations omitted). The fact that certain class representatives have been released from custody or transferred does not prevent them from adequately representing the interests of the class. *See Williams*, 312 F.R.D. at 254 (opining "[t]hat [p]laintiff's personal claims may be moot is inconsequential to" a request for prospective injunctive relief benefitting all class members and holding that "[t]he fact that

[p]laintiff is no longer incarcerated does not defeat adequacy"). After reviewing the class representatives' declarations and deposition testimony, the Court finds that Plaintiffs have demonstrated by a preponderance of the evidence that the representative parties will fairly and adequately protect the interests of the class.[6]

**II. Rule 23(b)(2) Requirement**

Because Plaintiffs have met the requirements of Rule 23(a), the Court must determine whether Plaintiffs have satisfied one of the criteria of Rule 23(b). Plaintiffs seek class certification under Rule 23(b)(2), which authorizes class actions when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Plaintiffs contend that application of Rule 23(b)(2) is appropriate because Defendants have "devised policies and engaged in systemic practices that deny people with mobility disabilities access to the programs generally available to people at Five Points[,]" and that such "challenged policies and practices can be remedied through class-wide injunctive relief." ECF No. 53-1 at 29–30. Defendants respond that class certification is improper because the Court "cannot issue a single declaration finding that each Plaintiff was unjustifiably denied a pusher, or a wheelchair, of any specific form of relief[,]" as such a determination "depends upon questions specific to each individual[.]" ECF No. 89-2

[6] Rule 23(a)(4) also requires that class counsel be "qualified, experienced and generally able" to conduct the litigation. See *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *see also* Fed. R. Civ. P. 23(g). Here, Defendants do not challenge the qualifications of Disability Rights Advocates ("DRA") and Prisoners' Legal Services of New York ("PLSNY") to serve as class counsel. *See* ECF No. 89-2 at 18. The Court finds that DRA and PLSNY meet the aforementioned requirements, ECF No. 53-11 ¶¶ 9-21; ECF No. 157 ¶¶ 3-13, and appoints them as class counsel.

at 20.

The Court disagrees with Defendants. As discussed above, Plaintiffs are challenging the legality of DOCCS's systemic policies and procedures that deny persons with mobility related disabilities access to programs and activities at Five Points. Lawsuits, such as this one, "alleging systemic failure of governmental bodies to properly fulfill statutory requirements" are "appropriate for class certification under Rule 23(b)(2)." *Raymond v. Rowland*, 220 F.R.D. 173, 181 (D. Conn. 2004) (citing *Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y. 1994) ("Plaintiffs' complaint falls within Rule 23(b)(2). Defendants' failure to act is said to be institutional not merely a cumulation of individual cases. The final injunctive and declaratory relief requested here would inure to the benefit of all class members . . . .")).

Indeed, Rule 23(b)(2) "is most commonly relied upon by litigants seeking institutional reform in the form of injunctive relief." *Stinson v. City of New York*, 282 F.R.D. 360, 379 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *see C.H. by J.G.*, 2024 WL 4833815, at *8 ("[G]enerally, when plaintiffs allege systemic problems and request systemic remedies, they meet the requirements of Rule 23(b)(2)."). Plaintiffs have satisfied Rule 23(b)(2) irrespective of the particulars of how any relief would impact them because Plaintiffs allege systemic failures at Five Points and seek systemic reforms such as a declaration that Defendants' policies and practices at Five Points violate federal law. *See Skyes v. Mel S. Harris & Asocs.* LLC, 780 F.3d at 97 (explaining that the nature of that relief need not be identical for every member, so long as the same injunction provides some benefit to the class as a whole);

*C.H. by J.G.*, 2024 WL 4833815, at *9 (finding Rule 23(b)(2) satisfied where "there are systemic issues capable of systemic fixes").[7]

**III. Ascertainability**

The Second Circuit has recognized "an implied requirement of ascertainability" for class action certification to ensure that the proposed class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member," *Brecher*, 806 F.3d at 24 (internal quotation marks and citation omitted). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24–25 (internal quotation marks and citation omitted). The Second Circuit has cautioned, however, that ascertainability is a "modest threshold requirement" that only interferes with class certification "if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017); *see also Stinson*, 282 F.R.D at 373 ("The standard for ascertainability is not demanding.") (internal quotation marks and citation omitted).

The ascertainability requirement is considered "to be even more muted" where the plaintiffs seek certification under Rule 23(b)(2). *Raymond v. New York State Dep't of Corr. & Cmty. Supervision,* 579 F. Supp. 3d 327, 340 (N.D.N.Y. 2022); *see Floyd v. City of New York,* 283 F.R.D. 153, 172–73 (S.D.N.Y. 2012). Because a putative Rule

[7] At various points in their brief, Defendants incorrectly assert that Plaintiffs rely on Rule 23(b)(3) for class certification. *See* ECF No. 89–2 at 7, 21–22. However, as Plaintiffs make clear in their motion and reply, they are seeking class certification under Rule 23(b)(2). *See* ECF No. 53; *see also* 156 at 20 n. 8.

23(b)(2) class is seeking only declaratory and injunctive relief that would benefit the class whether they are joined in the action or not, the need to accurately determine class membership is significantly reduced. *See Raymond*, 759 F. Supp. 3d at 340; *Ciaramella*, 2019 WL 4805553, at *14 (explaining that ascertainability is "a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason" and that "it would be illogical to require precise ascertainability in a suit that seeks no class damages" (internal quotation marks and citations omitted).

Indeed, "the Second Circuit and numerous district courts in the circuit have approved of class definitions without precise ascertainability under Rule 23(b)(2)." *Floyd*, 283 F.R.D. at 171 (collecting cases). Accordingly, "a Rule 23(b)(2) class is ascertainable as long as its 'general demarcations' are clear." *Raymond*, 579 F. Supp. 3d at 340 (quoting *Floyd*, 283 F.R.D. at 171–72).

Here, Plaintiffs' proposed class passes the modest threshold of ascertainability. Defendants maintain records of all people identified in their system with mobility disabilities. *See* ECF No. 53-8–53-10 (medical problem list reports). By reference to these records, class membership can be determined without significant hardship. Whether a person is disabled is an "objective criterion" that has definite boundaries. *Raymond*, 579 F. Supp. 3d at 341 (internal quotation marks, brackets, and citation omitted); *see also Westchester Indep. Living Ctr.*, 331 F.R.D. at 299 (finding proposed class of people with "mobility disabilit[ies]" ascertainable even if that proposed class

involves future members).[8]

## CONCLUSION

For the reasons discussed above, the Court finds that Plaintiffs have met both the requirements of Rule 23(a) and Rule 23(b)(2).[9] Accordingly, Plaintiffs' motion for class certification (ECF No. 53) is GRANTED. The Court appoints DRA and PLSRA as class counsel and certifies the following class: All people with mobility disabilities who are currently incarcerated or will be incarcerated at Five Points Correctional Facility. 'Mobility disabilities' is defined to include any physical impairment that substantially limits the major life activities of walking or standing, consistent with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

SO ORDERED.

DATED: August 21, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

---

[8] Defendants contend that the class definition is "overbroad" in that it includes incarcerated individuals who do not have medical verification to have mobility aids, individuals who were provided with appropriate mobility aids, and individuals who have refused mobility aids. ECF No. 89-2 at 25–26. Because of this, Defendants request that the Court modify the class definition but offer no alternative definition. The Court declines Defendants' request. As discussed above, irrespective of these purported differences, the putative class meets the requirements of Rule 23 and the implied requirement of ascertainability. The putative class is sufficiently identifiable and any modifications along the lines suggested by Defendants would render the putative class underinclusive considering the systemic nature of Plaintiffs' claims. *See Westchester Indep. Living Ctr.*, 331 F.R.D. at 301–02 (certifying class comprising of students and visitors with "mobility disabilities – that is, individuals who use wheelchairs, individuals who use other mobility aids, and individuals with disabilities that affect their ability to walk distances or climb stairs but who do not use any mobility aids . . . .").

[9] The Court denies Defendants' request to defer ruling on class certification until an evidentiary hearing is conducted. *See* ECF No. 89–2 at 26. Defendants do not identify why an evidentiary hearing is necessary, and the Court finds that an evidentiary hearing is not necessary to resolve the instant motion.